UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
COLIN BARTLEY,
                              Plaintiff,

        -against-

THE CITY OF NEW YORK, DETECTIVE
JOHN BURCHETTE [SHIELD # 1806], and
JOHN DOE AND JANE DOE #1-3 (the
names John and Jane Doe being fictitious, as
the true names are presently unknown),
                              Defendants.
------------------------------------------------------------X

Case No.

**COMPLAINT**

JURY DEMAND

**CV 13       3586**

**GLEESON, J.**

REYES, M.J

Plaintiff, COLIN BARTLEY, by his attorney, The Law Offices of UGO UZOH, P.C.,
complaining of the defendants herein, The City of New York, Detective John Burchette
[Shield # 1806] and John Doe and Jane Doe #1-3 (collectively, "defendants"),
respectfully alleges as follows:

<u>NATURE OF THE ACTION</u>

1.        This is an action at law to redress the deprivation of rights secured to the
          plaintiff under color of statute, ordinance, regulation, custom, and/or to
          redress the deprivation of rights, privileges, and immunities secured to the
          plaintiff by the Fourth, Fifth, Sixth and Fourteenth Amendments to the
          Constitution of the United States, and by Title 42 U.S.C. §1983 [and § 1985],
          [and arising under the law and statutes of the City and State of New York].

<u>JURISDICTION</u>

2.        The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 28
          U.S.C. § 1343, 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and under the
          Fourth, Fifth, Sixth and Fourteenth Amendments to the United States
          Constitution.

3.        As the deprivation of rights complained of herein occurred within the
          Eastern District of New York, venue is proper in this district pursuant to 28
          U.S.C. §1391 (b) and (c).

## THE PARTIES

4.        Plaintiff is and was at all times material herein a resident of the United States and the State of New York.

5.        At all relevant times, defendants Detective John Burchette [Shield # 1806] and John Doe and Jane Doe #1-3 (hereinafter "defendant officers") were, upon information and belief, and still are, agents and/or officers employed by defendant City of New York.

6.        At all times herein, the defendant officers were acting under the color of their official capacity, and their acts were/are performed under color of the statutes and ordinances of the City of New York and/or the State of New York. Defendant officers were/are the servants, agents, and employees of their co-defendant, the City of New York, such that their acts are imputed to the City of New York.

7.        At all relevant times, the defendant City of New York was and is a municipal corporation duly organized and existing under the laws of the State of New York, and was/is the employer of the defendant officers, and the actions of the defendant officers complained of herein were done as part of the custom, practice, usage, regulation and/or at the direction of the defendant City of New York.

8.        Plaintiff is suing the defendant officers in their individual and official capacities.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

9.        On or about February 22, 2012, at approximately 2:30 p.m., defendant officers, acting in concert, arrested the plaintiff without cause at his home at the time which is located at 714 Greenwood Avenue, 2nd Floor, Brooklyn, New York, and charged plaintiff with PL 190.79 'Identity theft in the second degree', among other charges.

10.       Plaintiff, however, did not assume the identity of any individual and did not commit any offense against the laws of New York City and/or State for which any arrest may be lawfully made.

2

11.     Prior to the arrest, defendant officers suddenly appeared at the plaintiff's home and demanded to speak with the plaintiff.

12.     When the plaintiff inquired as to the reason why, defendant officers arrested the plaintiff and tightly handcuffed the plaintiff with his hands placed behind his back.

13.     After falsely arresting the innocent plaintiff, defendant officers forcibly pushed the plaintiff into their police vehicle and transported the plaintiff to the NYPD-72nd Precinct.

14.     Eventually, after detaining the plaintiff at the precinct for a lengthy period of time, plaintiff was transported to the Central Booking to await arraignment.

15.     While plaintiff was awaiting arraignment, defendant officers met with prosecutors employed by the Kings County District Attorney's Office.

16.     During this meeting, defendant officers falsely stated to the prosecutors, among other things, that the plaintiff did assume the identity of another person.

17.     Based on the false testimony of the defendant officers, a prosecution was commenced against plaintiff.

18.     Following plaintiff's arraignment, bail was set to secure his release.

19.     Because plaintiff could not make bail, plaintiff was transported to Rikers Island Correctional Facility, and was incarcerated at said facility for several months.

20.     Eventually, on or about September 4, 2012, the false charges levied against plaintiff were summarily dismissed.

21.     That each and every officer who responded to and/or was present at the location of the arrest and/or at the precinct or facility knew and was fully aware that the plaintiff did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

22.     Nonetheless, defendant officers did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to intervene.

3

23.        As a result of the aforesaid actions by the defendants, plaintiff suffered and continues to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, loss of rights to familial association, wages and financial losses, pain and damage, and damage to reputation.

## FIRST CAUSE OF ACTION: 42 U.S.C. § 1983

24.        By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 23 of this complaint as though fully set forth herein.

25.        The conduct of defendant officers, as described herein, amounted to false arrest, excessive use of force, unlawful entry, abuse of authority, malicious abuse of process, failure to intervene, illegal and unreasonable stop, frisk, search and seizure, racial profiling, pattern of harassment, conspiracy, fabrication of evidence, denial of equal protection, discrimination, cruel & unusual punishment, denial of right to a fair trial, denial of due process rights and malicious prosecution.

26.        Such conduct violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

27.        Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

## SECOND CAUSE OF ACTION: FAILURE TO TRAIN/SUPERVISE/DISCIPLINE AND MUNICIPAL POLICY - against defendant City of New York

28.        By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 27 of this complaint as though fully set forth herein.

29.        Defendant City of New York, acting through the New York Police Department, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their

4

properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when probable cause exists for such arrest.

30.    Additionally, defendant City of New York, acting through Charles J. Hynes and the Office of the District Attorney of the County of Kings, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise, and discipline its Assistant District Attorneys and employees concerning correct practices in conducting investigations, interviewing witnesses and informants, assessing the credibility of witnesses and informants, the initiation and/or prosecution of criminal actions, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and the duty and/or obligation of candor toward the court.

31.    Defendant City of New York, acting through aforesaid NYPD and District Attorney, had actual and/or de facto policies, practices, customs and/or usages of wrongfully arresting, illegally stopping, frisking, searching, seizing, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are members of racial/ethnic minority groups such as plaintiff, who is black, on the pretext that they were involved in some crime or offense.

32.    Further, the existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct.

33.    For example, in *Floyd v. City of New York*, 813 F. Supp. 2d 417, 422 (S.D.N.Y. 2011), the Southern District of New York observed that the City of New York had been accused of racial profiling on multiple occasions and that it had settled at least one of the lawsuits brought against it concerning racial profiling.

34.    In *Ligon v. City of New York*, 12 Civ. 2274, 2013 U.S. Dist. LEXIS 22383, at *9-*10 (S.D.N.Y. Feb. 14, 2013), the Court determined that the City of New

5

York, acting through the NYPD, engages in illegal and unreasonable stop, frisk, search and seizure. *See also Davis v. City of New York*, 10 Civ. 0699, 2013 U.S. Dist. LEXIS 45601 (S.D.N.Y. March 28, 2013) (same).

35.     Additionally, NYPD Police Officer Michael Carsey was recently convicted of felonies for lying under oath and falsifying information while applying for a search warrant.

36.     Police Officer Carsey's supervisor, Sergeant William Eiseman, had earlier admitted to fabricating facts to justify searching vehicles and homes for cocaine, marijuana and guns, filing false information to obtain search warrants and performing illegal searches of vehicles and homes. That Sergeant Eiseman admitted to perjury and fabricating evidence against innocent persons that he falsely arrested and charged with possession of narcotics and/or illegal drugs, and also admitted to training numerous young police officers to commit similar crimes and/or offenses.

37.     In addition, in or about October 2011, Detective Stephen Anderson testified against Detective Jason Arbeeny, a veteran of the NYPD. That Detective Anderson testified that, among other things, it is a common practice within the NYPD to plant narcotics and/or illegal drugs -- commonly known within the NYPD as "flaking" -- on innocent persons in order to meet arrest quotas. Detective Anderson referred to the practice of planting narcotics and/or illegal drugs on innocent persons as "attaching bodies" to the narcotics and/or illegal drugs. According to Detective Anderson, this practice "was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators."

38.     Regarding the issue of arrest quotas, Detective Anderson confirmed that the NYPD requires officers to fill quotas, and testified that even as a detective "you still have a number [of arrests] to reach while you are in the narcotics division."

39.     Recently, a jury determined that officers of the NYPD are permitted, as a policy and/or practice, to fill their arrest quotas by making unlawful arrests.

*See Bryant v. City of New York*, Index No. 22011/07 (Sup. Ct. County of Kings Feb. 18, 2011).

40.  Prior to his testimony, Detective Anderson and his partner provided false testimony in court claiming that they purchased cocaine from certain individuals who as surveillance video later confirmed did not have any sort of contact or communication with Detective Anderson and his partner during the time period that Detective Anderson and his partner claimed to have purchased the controlled substances and/or illegal drugs.

41.  That Detective Arbeeny was subsequently convicted of planting controlled substances and/or illegal drugs on a woman and her boyfriend, and was convicted of the charges against him including official misconduct, offering a false instrument for filing and falsifying business records.

42.  That the New York Supreme Court, County of Kings, Criminal Term, Gustin L. Reichbach, J., determined that the NYPD has a system of flawed procedures that caused Detective Arbeeny's unlawful actions. Judge Reichbach further determined that the NYPD has a widespread culture of corruption and has adopted a "cowboy culture" and practice which he described as "[a]nything goes. . . ." That Judge Reichbach expressed shock at what he described as "the seeming pervasive scope of misconduct [and even worse] . . . the seeming casualness by which such conduct is employed."

43.  Further, in or about 2008, the New York Supreme Court, County of Kings, Criminal Term, Albert Tomei, J., determined at a Mapp hearing in *People v. Simms*, Indictment No. 11263/07, which was held on or about September 9, 2008, that the police officers involved in the arrest in that matter are "not credible" and that the police officers' "testimony is so obviously fabricated . . . to avoid any Constitutional objections the defendant may have . . . and that [any] property taken . . . is to be suppressed because it was the product of an unlawful arrest and search and seizure."

44.  In addition to the instances of police misconduct described above, several officers of the NYPD -- including but not limited to Detective Christopher Perino, Police Officer Michael Daragjati, Police Officer Henry Tavarez,

Police Officer William Masso, Detective Oscar Sandino, Detective Sean Johnstone, Sergeant Michael Arenella, Sergeant Jerry Bowens, Police Officer Michael Pena, Police Officer Nicholas Mina, Detective Kevin Spellman, Sergeant Bobby Hadid and Police Officer Admir Kacamakovic -- have recently been convicted of various similar crimes as those described herein including but not limited to falsifying police reports, perjury, corruption, robbery, gun running, drug dealing, prostitution, theft and assault. Former NYPD Commissioner Bernard Kerik was also recently convicted of corruption and similar crimes as those described herein.

45.     In addition to the named individual defendants, several officers of the NYPD assigned to the NYPD-72nd Precinct -- as the named individual defendants -- routinely make unlawful arrests charging innocent persons with various crimes and/or offenses.

46.     That most of the arrests and charges made by officers assigned to the NYPD-72nd Precinct are usually voided and/or dismissed by prosecutors for lack of evidence.

47.     That defendant City of New York has settled numerous lawsuits brought in this district against several officers assigned to the NYPD-72nd Precinct in connection with the unlawful arrests and charges described herein.

48.     That defendant City of New York maintained the above described policies, practices, customs or usages knowing fully well that the policies, practices, customs or usages lead to improper conduct by its police officers and employees. In failing to take any corrective actions, defendant City of New York acted with deliberate indifference, and its failure was a direct and proximate cause of plaintiff's injuries as described herein.

49.     The actions of defendants, acting under color of State law, deprived plaintiff of his due process rights, and rights, remedies, privileges, and immunities under the laws and Constitution of the United States, treatise, ordinances, customary international law and norms, custom and usage of a right; in particular, the right to be secure in his person and property, to be free from abuse of process, the excessive use of force and the right to due process.

8

50.     By these actions, defendants have deprived plaintiff of rights secured by treatise, ordinances, customary international law and norms, custom and usage of a right, and the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

THIRD CAUSE OF ACTION: 42 U.S.C. § 1985

51.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 50 of this complaint as though fully set forth herein.

52.     In an effort to find fault to use against the plaintiff, defendant officers conspired among themselves and conspired with other individuals to deprive plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth, Fifth, Sixth and Fourteenth Amendments to United States Constitution, because of his race, ancestry and/or ethnicity, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

53.     In light of the foregoing therefore, defendant officers engaged in a conspiracy designed to deprive the plaintiff of his constitutional and federal rights in violation of 42 U.S.C. § 1985.

54.     As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore stated.

FOURTH CAUSE OF ACTION: NEW YORK STATE CONSTITUTION, ARTICLE I, §§ 5, 6, 8, 11 & 12

55.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 54 of this complaint as though fully set forth herein.

56.     By reason of the foregoing, and by arresting, detaining and imprisoning plaintiff without probable cause or reasonable suspicion, and harassing and assaulting him and depriving him of due process and equal protection of laws, defendants deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 5 (prohibiting cruel and unusual punishments), Article 1, § 6 (providing for due process), Article 1, § 8 (guaranteeing freedom of speech), Article 1, § 11 (prohibiting

discrimination in civil rights and providing for equal protection of laws) &
Article I, § 12 (prohibiting unreasonable searches & seizures) of the New
York Constitution.

57.      In addition, defendant officers conspired among themselves and conspired
with other individuals to deprive plaintiff of his constitutional rights secured
by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution, and took
numerous overt steps in furtherance of such conspiracy, as set forth above.

58.      Defendant officers acted under pretense and color of state law and in their
individual and official capacities and within the scope of their respective
employments as officers, agents, or employees. Defendant officers' acts were
beyond the scope of their jurisdiction, without authority of law, and in abuse
of their powers. Defendant officers acted willfully, knowingly, and with the
specific intent to deprive plaintiff of his constitutional rights secured by
Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution.

59.      Defendants, their officers, agents, servants, and employees were responsible
for the deprivation of plaintiff's state constitutional rights.

## FIFTH CAUSE OF ACTION: NEGLIGENT & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

60.      By this reference, plaintiff incorporates each and every allegation and
averment set forth in paragraphs 1 through 59 of this complaint as though
fully set forth herein.

61.      The defendants engaged in extreme and outrageous conduct, intentionally
and recklessly causing severe emotional distress to plaintiff.

62.      Plaintiff's emotional distress has damaged his personal and professional life
because of the severe mental pain and anguish which were inflicted through
deliberate and malicious actions including the assault, detention and
imprisonment by defendants.

63.      Consequently, plaintiff has been damaged and hereby demands
compensatory and punitive damages in an amount to be proven at trial
against each of the defendants, individually and severally.

SIXTH CAUSE OF ACTION: NEGLIGENT HIRING AND RETENTION OF EMPLOYMENT SERVICES

64.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 63 of this complaint as though fully set forth herein.

65.     Upon information and belief, defendant City of New York, through its various agencies and departments including the defendants in this action, owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff.

66.     Upon information and belief, defendant City of New York, through its various agencies and departments including the defendants in this action owed a duty of care to plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated that an injury to plaintiff or to those in a like situation would probably result from such conduct described herein.

67.     Upon information and belief, defendant City of New York, knew or should have known through the exercise of reasonable diligence that defendant officers were not prudent and were potentially dangerous.

68.     Upon information and belief, defendant City of New York's negligence in hiring and retaining the defendants proximately caused plaintiff's injuries.

69.     Upon information and belief, because of defendant City of New York's negligent hiring and retention of defendant officers, plaintiff incurred and sustained significant and lasting injuries.

WHEREFORE, plaintiff respectfully prays judgment as follows:

a.     For compensatory damages against all defendants in an amount to be proven at trial;

b.     For exemplary and punitive damages against all defendants in an amount to be proven at trial;

c.     For costs of suit herein, including plaintiff's reasonable attorney's fees; and;

d.     For such other and further relief as the court deems proper.

DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiff demands a

trial by jury.

Dated: Brooklyn, New York
       June 25, 2013

                              UGO UZOH, P.C.


                    By:    Ugochukwu Uzoh (UU-9076)
                           Attorney for the Plaintiff
                           304 Livingston Street, Suite 2R
                           Brooklyn, NY 11217
                           (718) 874-6045